Dorothy Rahn Beale (hereinafter "the mother") petitioned the Baldwin Circuit Court to domesticate a divorce judgment entered in the State of Maine, to enforce certain provisions in that judgment, and to amend other provisions in it. Two children were born of the marriage, and the mother and the children have lived in Alabama for several years. The respondent, D. Wesley Haire (hereinafter "the father"), is, was, and has been a resident of Maine throughout the entire time of the proceedings held in connection with this case. The father filed a motion to dismiss this action, claiming a lack of personal and subject-matter jurisdiction. The trial court granted the father's motion; the mother appeals from the judgment of dismissal.
The sole issue raised is whether the Alabama circuit court properly dismissed the case for a lack of jurisdiction. The father argues that he is, and has been, a resident of Maine; that he therefore has not had sufficient "minimum contacts" with the State of Alabama to give the Alabama court in personam jurisdiction; and that the dismissal was therefore proper. Additionally, the father argues that the court has no subject-matter jurisdiction because, he says, the requirements of the Alabama Uniform Interstate Family Support Act, § 30-3A-101 et seq., Ala. Code 1975 (hereinafter "UIFSA"), have not been met.
The mother and father were divorced on September 27, 1995, by a district court in the State Court of Maine. Several post-divorce orders were entered by the court in Maine, the last one on October 8, 1998. The divorce court's order of that date mentions that the father had had a lack of contact with the parties' children. The pertinent language from the October 8, 1998, order is: "[The father] has had essentially no contact with the children in two years." The father did submit to a court-ordered "family assessment" in Alabama in February 1999, but his involvement with this state in regard to that assessment apparently consisted of only one visit to Alabama. By way of affidavit, the mother states that the father has had contact with the children in Baldwin County, but she does not allege the number of contacts, their duration, or the dates upon which they occurred.
The mother asks us to hold that the father had sufficient "minimum contacts," under the provisions of Rule 4(a)(2)(A)-(I), Ala.R.Civ.P., and to reverse the judgment of dismissal. She argues that the father's voluntary visits to Alabama are sufficient "minimum contacts" to enable the courts of this State to enforce and amend the Maine divorce judgment insofar as it relates to child-support amounts, child-support arrearages, and postminority higher-education obligations. The difficulty we have with the mother's argument is that under the provisions of Rule 4(a)(2), only subsection (I) could apply to the facts of this case, and we note that that subsection provides that for an Alabama court to have jurisdiction over a nonresident defendant it must be "fair and reasonable" to require that defendant *Page 358 
to come to this state to defend a legal action. The mother's description of the father's contacts with Alabama is sketchy, at best. Her statement that the father "has visited our children" in Alabama is insufficient in detail for us to conclude that his visits provided contacts sufficient to give an Alabama court jurisdiction. We reject her contention that the father's visit to Alabama for the purpose of undergoing a family psychological assessment brought him under the provisions of Rule 4(a)(2); that visit was not voluntary on the father's part, but was called for by a post judgment order from the divorce court in Maine.
The mother relies primarily upon three appellate decisions to support her argument that the Alabama court had in personam jurisdiction. Two of those decisions are from Ex parte Brislawn, 443 So.2d 32
(Ala. 1983), and Wells v. Wells, 533 So.2d 606 (Ala.Civ.App. 1987). The holding in Brislawn is clearly distinguishable on its facts, because in that case Alabama was the only state in which the parties had ever lived as husband and wife, with the exception of having spent their wedding night in Columbus, Georgia. Likewise, Wells is not persuasive because in that case the father had made several visits to Alabama to exercise his parental rights to see his children and during those visits had stayed at the children's residence. The third case the mother relies on is McGee v. International Life Insurance Co., 355 U.S. 220 (1957).McGee is also inapplicable to the facts of this case, because that case concerned the attempted enforcement in a state court in Texas of a judgment obtained in a California state court where the California court had acquired jurisdiction strictly based on a California statute that served to subject foreign corporations to California lawsuits on insurance contracts they entered with residents of California. In the present case, the mother left the state of Maine and moved to Alabama. The father had no choice or say in her move. The father's only contacts with this state have been an unknown number of visits with his children and one court-ordered visit to undergo a family assessment. To require the father to travel a great distance to Alabama to defend here an action relating to child support, when he was not responsible for, and did not consent to, his children's move to this state is neither fair nor reasonable. See Hubbard v. State, 625 So.2d 815, 817 (Ala.Civ.App. 1993), and Burrill v. Sturm, 490 So.2d 6, 8 (Ala.Civ.App. 1986).
Alabama has adopted the UIFSA. One section of the UIFSA establishes the basis for personal jurisdiction over a nonresident in an action pertaining to orders of support. That section, § 30-3A-201, Ala. Code 1975, provides:
 "In a proceeding to establish, enforce, or modify a support order or to determine parentage, a court of this state may exercise personal jurisdiction over a nonresident individual or the individual's guardian or conservator if:
 "(1) the individual is personally served with summons and complaint within this state;
 "(2) the individual submits to the jurisdiction of this state by consent, by entering a general appearance, or by filing a responsive document having the effect of waiving any contest to personal jurisdiction;
 "(3) the individual resided with the child in this state;
 "(4) the individual resided in this state and provided prenatal expenses or support for the child;
 "(5) the child resides in this state as a result of the acts or directives of the individual; *Page 359 
 "(6) the individual engaged in sexual intercourse in this state and the child may have been conceived by that act of intercourse;
 "(7) the individual asserted parentage in the putative father registry as provided in Section 26-10C-1, which is maintained in this state by the Department of Human Resources; or
 "(8) there is any other basis consistent with the constitutions of this state and the United States for the exercise of personal jurisdiction."
The father does not fit within any of the eight criteria by which the Alabama court could obtain personal jurisdiction over him under the Act.
Another section of the UIFSA we consider is § 30-3A-205, Ala. Code 1975, which states in pertinent part:
 "(d) A court of this state shall recognize the continuing, exclusive jurisdiction of a tribunal of another state which has issued a child-support order pursuant to this chapter or a law substantially similar to this chapter."
We find the "Official Comment" to the UIFSA (regarding § 30-3A-205) instructive as we consider the issue before us:
 "[T]he the issuing tribunal retains continuing, exclusive jurisdiction over a child support order, except in very narrowly defined circumstances. As long as one of the individual parties or the child continues to reside in the issuing state, and as long as the parties do not agree to the contrary, the issuing tribunal has continuing, exclusive jurisdiction over its order. . . . The statute attempts to be even-handed — the identity of the remaining party — obligor or obligee — does not matter. . . .
". . . .
 ". . . Modification requires that a tribunal have personal jurisdiction over the parties and meet other criteria as provided in Sections 609 through 614, infra."
(emphasis in original.)
The State of Maine has also enacted the UIFSA. Maine's version of the UIFSA became effective October 1, 1997, some three months before the effective date of our Act. See 19-A Maine Revised Statutes Annotated (M.R.S.A.) §§ 2801, 2903 (1964). The language of our statute demands that we recognize the child-support order of the Maine court and accord that court its proper continuing, exclusive jurisdiction over this matter.
Aside from the fact that the trial court has no personal jurisdiction over the father, we conclude that the trial court has no subject-matter jurisdiction to modify the orders from the court in Maine. We reach this conclusion by analyzing a provision of the UIFSA. That provision, §30-3A-611, Ala. Code 1975, entitled "Modification of Child-Support Order of Another State," reads, in pertinent part, as follows:
 "(a) After a child-support order issued in another state has been registered in this state, the responding court of this state may modify that order only if Section 30-3A-613 [which section addresses instances where both parties reside in this state and the child no longer resides in the issuing state, which is a fact situation not present here] does not apply and after notice and hearing it finds that:
"(1) the following requirements are met:
 "(i) the child, the individual obligee, and the obligor do not reside in the issuing state;
 "(ii) a petitioner who is a nonresident of this state seeks modification; and *Page 360 
 "(iii) the respondent is subject to the personal jurisdiction of the court of this state; or
 "(2) the child, or a party who is an individual, is subject to the personal jurisdiction of the court of this state and all of the parties who are individuals have filed written consents in the issuing tribunal for a court of this state to modify the support order and assume continuing, exclusive jurisdiction over the order."
We find the Official Comment following that section very enlightening in its analysis of a fact situation similar to the one present in this case. That comment includes this language:
 "As long as the issuing state [Maine] retains its continuing, exclusive jurisdiction over its child support order, a registering sister state [Alabama] is precluded from modifying that order. . . .
". . . .
 "Under UIFSA a tribunal may modify an existing child support order of another state only if certain quite limited conditions are met. First, the tribunal must have all the prerequisites for the exercise of personal jurisdiction required for rendition of an original support order. Second, one of the restricted fact situations described in Subsection (a) must be present. . . . UIFSA establishes a set of `bright line' rules which must be met before a tribunal may modify an existing child support order. . . .
 "The UIFSA system begins with Section 205, which mandates that the continuing, exclusive jurisdiction of the issuing tribunal remains intact as long as one individual party or the child continues to reside in the issuing state, or unless the parties mutually agree to the contrary. . . .
 "Under Subsection (a)(1), the individual parties affected by the initial order must have moved from the issuing state before a tribunal in a new forum may modify. . . .
 ". . . This restriction attempts to achieve a rough justice between the parties in the majority of cases by preventing a litigant from choosing to seek modification in a local tribunal to the marked disadvantage of the other party. For example, an obligor visiting the children at the residence of the obligee cannot be validly served with citation accompanied by a motion to modify the support order. . . . [T]he obligee is required to register the existing order and seek modification of that order in a state which has personal jurisdiction over the obligor other than the state of the obligee's residence. . . .
 ". . . Two major arguments sustain the choice of venue made by the Act. First, `jurisdiction by ambush' will be avoided. That is, personal service on either the custodial or noncustodial party found within the state borders will not yield jurisdiction to modify. Thus, parents seeking to exercise rights of visitation, delivering or picking-up the child for such visitation, or engaging in unrelated business activity in the state, will not be involuntarily subjected to protracted litigation in an inconvenient forum. The chilling effect on the exercise of parental contact with the child that the possibility of such litigation might have is avoided. Second, disputes about whether the tribunal has jurisdiction will be eliminated; submission by the petitioner to the state of residence of the respondent alleviates this issue completely."
The commentary further discusses two exceptions to the rule, which apply (1) where the parties consent to jurisdiction in a particular forum and (2) where all parties have left the issuing state and now *Page 361 
reside in the same state. Neither of those exceptions applies to this case.
The mother argues in her brief that the Maine divorce court "would have no ability to impose post minority higher education" support for the children. She cites volume 25 of Atlantic Digest 2d and the topic "parent child" as authority for her position. She does not cite any case from the Maine appellate courts, or from any other courts for that matter, that supports her argument, nor does she cite to a particular section number under the general topic of "parent child." In our own review of the appropriate sections under that topic in Atlantic Digest 2d, we found no headnotes suggesting Maine caselaw that would support the proposition she so boldly states in her brief.
The principle that the issuing state will hold continuing, exclusive jurisdiction over child-support matters pervades the Act and dictates that in this case the State of Maine holds continuing, exclusive jurisdiction over postjudgment orders affecting child support, as long as the father remains a resident of that state. Thus, a court in the State of Maine would be the proper court to adjudicate the claims the mother has presented to the Alabama circuit court.
The dismissal of the mother's action was proper, both for a lack of personal jurisdiction over the father and for a lack of subject-matter jurisdiction. We agree that the trial court had no jurisdiction to entertain the mother's claims against the father; consequently, the judgment of dismissal is affirmed.
The father's request for an attorney fee on appeal is granted in the amount of $1,000.00.
AFFIRMED.
Yates, P.J., and Crawley, Thompson, and Murdock, JJ., concur.